**CITRONELLE–MOBILE GATHERING, INC., Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION, Defendant-Appellee,**

**Federal Energy Administration, Defendant Intervenor-Appellee.**

No. 76–3712.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1978.

Lester M. Bridgeman, Washington, D. C., Philip B. Kurland, Daniel D. Polsby, Joseph A. Morris, Chicago, Ill., for plaintiff-appellant.

Edward P. Turner, Jr., Chatom, Ala., Truman Hobbs, Montgomery, Ala., amicus curiae.

Catherine C. McCulley, John E. Bailey, Houston, Tex., Raymond A. Corcoran, Mobile, Ala., for Gulf Oil Co.

Leonard Schaitman, Marvin L. Coan, Rex E. Lee, Asst. Atty. Gen., Stanley D. Rose, Atty., Stephanie L. Golden, Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., for defendant intervenor-appellee.

Before CLARK, FAY, and VANCE, Circuit Judges.

CLARK, Circuit Judge:

This case calls upon us to resolve questions of our appellate jurisdiction. Pleading only diversity jurisdiction under 28 U.S. C.A. § 1332, plaintiff, Citronelle-Mobile Gathering Co. [Citronelle] filed suit against Gulf Oil Co. [Gulf] for breach of a contract to buy crude oil. Gulf answered and counterclaimed for damages based upon Citronelle's willful failure to comply with the Emergency Petroleum Allocation Act of 1975 [EPAA of 1975], 15 U.S.C.A. § 753 note, and regulations promulgated pursuant to it. Gulf's counterclaim invoked the jurisdiction of the district court under diversity of citizenship and under the EPAA of 1973, 15 U.S.C.A. § 751 *et seq.*, as amended by the EPAA of 1975. The Federal Energy Administration [FEA] intervened on the side of the defendant Gulf to defend federal

mandatory price and allocation regulations and rulings under EPAA of 1975. The district court ruled in favor of Gulf and FEA on all issues including the counterclaim.[1] Citronelle appealed to this court. Gulf and FEA assert that jurisdiction to hear this appeal lies only in the Temporary Emergency Court of Appeals [TECA], while Citronelle contends that appellate jurisdiction lies only in this circuit. For the reasons stated, we hold that decision on this question of our jurisdiction would be premature at this time and we remand the case to the district court for the submission to TECA of substantial constitutional questions involving the EPAA of 1973 and the EPAA of 1975 [collectively referred to as the Allocation Acts] and the regulations promulgated pursuant to these acts.

The dispute between the parties centers around the effect of ostensibly retroactive pricing regulations upon an installment contract made between Gulf and Citronelle, some installments of which were partially or fully performed during the hiatus between the expiration of statutory authority to regulate under the EPAA of 1973 and the restoration of regulatory authority in the EPAA of 1975, which purported to apply price regulations retroactively to cover the gap between the expiration of regulatory authority under the EPAA of 1973 and resumption of regulatory authority under the EPAA of 1975.

The parties do not dispute the material facts in this case. Citronelle buys crude oil near Mobile, Alabama, and transports it to Mobile where it stores the oil and holds it for sale. Gulf regularly buys supplies of oil from companies such as Citronelle. Prior to September 1, 1975, both Citronelle and Gulf were subject to price regulation of their crude oil sales pursuant to the EPAA of 1973, 15 U.S.C.A. § 751 *et seq.*, and Executive Order 11748, under which regulations were issued providing for the allocation and pricing of crude oil and certain other petroleum products.[2] Prior to its amendment by the EPAA of 1975, the EPAA of 1973 provided that all authority conferred for the regulation of prices and allocation of crude oil would expire at midnight on August 31, 1975.

In August of 1975, Gulf contracted with Citronelle to buy all its available crude oil for $13 per barrel beginning on September 1, 1975, the date upon which regulatory authority under the EPAA of 1973 lapsed, and continuing until any later imposition of valid controls on the price of crude oil. Pursuant to this contract, Gulf accepted crude oil deliveries from Citronelle on the following dates in 1975: September 1, 9, and 29; October 26; November 22; and December 14.

On September 29, 1975, the President signed into law the EPAA of 1975, which authorized continuation of the FEA regulations that had expired on August 31. The EPAA of 1975 stated:

> It is the intent of the Congress that the regulations promulgated under the Emergency Petroleum Allocation Act of 1973 shall be effective for the period between August 31, 1975, and the date of enactment of this Act.[3]

By the time the EPAA of 1975 became law, Gulf had received three installment deliveries from Citronelle under its contract and had paid for the September 1 delivery at the full contract price of $13 per barrel. In response to Citronelle's demand for payment for the other deliveries made under

1. *Citronelle-Mobile Gathering Co. v. Gulf Oil Corp.*, 420 F.Supp. 162 (S.D.Ala.1976).

2. The opinion of the district court contains a brief history and description of the regulatory scheme governing crude oil pricing. 420 F.Supp. at 165–68.

3. 15 U.S.C.A. § 753 note. The FEA administratively construed this portion of the EPAA of 1975 as mandating that price and allocations regulations of the FEA apply as though they had been in effect continuously since August 31, 1975:

> Persons subject to the regulations should carry out September transactions as though the EPAA of 1975 had been enacted prior to September 1, 1975.

FEA Ruling 1975–17, Mandatory Petroleum Price and Allocation Regulations Application During September 1975, 40 Fed.Reg. 48341 (October 15, 1975).

the contract, Gulf contended that by the EPAA of 1975 Congress retroactively extended the regulations effective on August 31, 1975, to cover all transactions occurring during the hiatus between the August 31 expiration of regulatory authority under the EPAA of 1973 and the September 29 extension of regulatory authority under the EPAA of 1975. Application of the regulations effective on August 31, 1975, to the deliveries made by Citronelle under the contract would limit the price that Gulf could pay for the crude oil delivered to $5.40 per barrel, instead of the $13 per barrel specified by the contract. Thus, Gulf contended that valid retroactive FEA regulations forbade it to pay more than $5.40 per barrel.

Citronelle filed suit for $9,645,145, the difference between the price that Gulf agreed to pay under the contract for the six shipments and the price it was willing to pay under its interpretation of the EPAA of 1975. Gulf admitted all the material allegations of Citronelle's suit and conceded that the $13 per barrel price was fair and reasonable. But, interposing the EPAA of 1973, as amended by the EPAA of 1975, as a defense, Gulf denied liability under the contract and counterclaimed for $501,-077.89, the net amount that it allegedly overpaid for the first delivery of September 1, for which it paid Citronelle in September, before passage of the EPAA of 1975.

Section 5(a) of the EPAA of 1973, 15 U.S.C.A. § 754(a), expressly incorporates the provisions for review found in the Economic Stabilization Act of 1970, as amended [ESA], reproduced at 12 U.S.C.A. § 1904 note. Although the ESA is no longer in effect, pursuant to Section 754, its review and civil action provisions continue to govern proceedings under the EPAA of 1973 and the EPAA of 1975. Gulf could bring its counterclaim under the ESA's Section 210, which provides in part,

> (a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ for an injunction . . . and/or damages.

The remaining portions of Section 210 provide for the recovery of costs and attorneys' fees for one who brings a successful action to challenge an overcharge in violation of the regulations.

The district judge heard the case without a jury. His Opinion and Order interpreted the EPAA of 1975 to mandate that regulations under the Allocation Acts be treated as having continued in force as if there had been no hiatus period. Therefore, because the contract between Gulf and Citronelle would have fallen under the regulations in effect on August 31 but for the expiration of statutory authority under the EPAA of 1973, the district court held that, by law, no installment of the contract could be performed at a cost-per-barrel agreement above the $5.40 permitted by the regulations. Citronelle presented two constitutional challenges to the regulations: first, that retroactive application of the regulations to affect portions of an installment contract fully performed on both sides or fully performed except for the duty of the purchasing party to pay for the installment violates due process; second, that the "one House veto" provisions of the EPAA of 1973 as amended by the EPAA of 1975 violate the concept of separation of powers by according Congress an unconstitutional power to nullify rapidly the actions of the President. Finding these questions plainly without merit or foreclosed by prior decisions of the Supreme Court, the district court declined to certify them to TECA.

The review provisions of the ESA, made applicable to the Allocation Acts by 15 U.S.C.A. § 754, require the district court to certify substantial constitutional issues to TECA:

> (c) In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. . . .

Gulf's counterclaim, which expressly invoked the jurisdiction of the Allocation Acts, clearly constituted an "action commenced under this title," within the meaning of the statute, Section 211(c), 12 U.S.C.A. § 1904 note. This counterclaim is too closely related to the primary action to allow the cases to proceed separately, *cf.* Rules 13(a), 54(b), Fed.R.Civ.P. Therefore, we need not consider whether certification to TECA would have been a course of action required of the district court as to the principal action alone.

Gulf and the FEA assert that Citronelle can appeal the judgment of the district court only through those portions of the elaborate provisions for review set forth in the Economic Stabilization Act of 1970, as amended, 12 U.S.C.A. § 1904 note, which the EPAA of 1973 expressly incorporated in Section 5(a), 15 U.S.C.A. § 754(a), as the procedure to be followed in Allocation Acts cases. Citronelle contends that this court has jurisdiction over this appeal as we would over any final decision of a district court in a diversity case.

At the core of this dispute lies a difference in interpretation of Section 211(b)(2) of the ESA, 12 U.S.C.A. § 1904 note, which provides:

> Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. Such appeals shall be taken by the filing of a notice of appeal with the Temporary Emergency Court of Appeals within thirty days of the entry of judgment by the district court.[4]

The defendants assert that we should treat this appeal as one in a case or controversy "arising under" the EPAA of 1973, as amended, such that Citronelle can only challenge the district court's judgment in the TECA. They support this position by reference to the congressional purpose in establishing TECA jurisdiction: to centralize and expedite appeals raising questions of the construction or of the constitutionality of the legislation.[5]

To support its position that the appeal is properly docketed here, Citronelle relies on the well-established meaning of the phrase "arising under" as a term of art in the law of federal jurisdiction. In *Louisville & N. R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 43, 53 L.Ed. 126 (1911), the Supreme Court interpreted this test as requiring that the reviewing court examine the initial complaint filed by the plaintiff to determine whether it required federal law to state a cause of action. *Mottley* held that a case or controversy did not arise under federal law where the requisite element of federal law was

---

**4.** However, Section 211(a), 12 U.S.C.A. § 1904 note, provides:

> nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court.

Where a defense raises the validity of the Allocation Acts or of action taken under them, the review provisions of the ESA provide the action can be removed to a United States district court.

**5.** In 1971, Congress amended the Economic Stabilization Act of 1970 to add the provisions for judicial review that the Allocation Acts have incorporated. Senate Report No. 92–507 of the Committee on Banking, Housing, and Urban Affairs had this interpretation of the judicial review provisions in recommending them for passage:

> The judicial review provision has been written with several important principles in mind: (1) speed and consistency of decisions in cases arising under the Act, (2) avoidance of any breaks or stays in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program.

> .    .    .    .    .

> In order to funnel into one court all the appeals arising out of the District Courts and thus gain in consistency of decision, there is created a Temporary Emergency Court of Appeals similar to the court established for the same purpose in the wage and price control programs of the World War II and the Korean conflict.

1971 U.S.Code Cong. & Admin.News, 92d Cong., 1st Sess., pp. 2283, 2292.

stated only as a defense to the action or where the complaint merely referred to an anticipated defense.[6]

We do not have to choose between these competing interpretations of the ESA to resolve the case at bar, however, because we find at a point prior to the docketing of this appeal an error by the district court which, by preventing the issues in this case from being developed in the manner contemplated by Congress, requires remand for further proceedings.

The scheme of judicial review which Congress provided for the Allocation Acts contemplates that no question of their constitutional validity or that of the regulations promulgated pursuant to them be decided by this court. In fact, Section 211(g), 12 U.S.C.A. § 1904 note, expressly provides:

> The Temporary Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Temporary Emergency Court of Appeals, shall have exclusive jurisdiction to determine the constitutional validity of any provision of this title or of any regulation or order issued under this title. Except as provided in this section, no court, Federal or State, shall have jurisdiction or power to determine the constitutional validity of any provision of this title or of any such regulation or order . . . .

In this manner, Congress has expressly withdrawn from us jurisdiction to consider questions of the constitutionality of the Allocation Acts and regulations under them.

Consistent with this expressed intent to place the determinations of constitutionality exclusively in TECA or the Supreme Court, Section 211(c) of the ESA, 12 U.S. C.A. § 1904 note, provides:

> In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition.

It would be improper for this court to reach the merits of the present appeal because we find that the district court erred in concluding that this case presented no substantial constitutional questions which required certification to TECA under Section 211(c). Accordingly, we must remand the case so that proper procedures may be followed.

■ The district court held constitutionally insubstantial the issue whether under the circumstances of this case retroactive application of the Allocation Acts regulations violated the Due Process Clause of the fifth amendment. We agree with the district court's statement of the standard for a substantial constitutional question under Section 212(g). A constitutional issue is not "substantial" if (a) it is plainly without merit, or (b) Supreme Court or TECA precedent clearly forecloses the issue raised. Cf. *Delaware Valley Apartment House Owners Ass'n v. United States*, 350 F.Supp.

---

**6.** This approach finds support in the Seventh Circuit's decision in *St. Mary's Hospital, Inc. v. Ogilvie*, 496 F.2d 1324 (7th Cir. 1974), which held that the words "arising under" in the ESA review provisions should be construed as the term of art in federal jurisdiction would be construed; that is, the question should be determined from an examination of the plaintiff's complaint rather than from an examination of the issues actually presented at trial. In construing the Emergency Natural Gas Act, TECA has held that the words "arising under" as a jurisdictional grant in an analogous context "probably" conform to the meaning of the words as they appear in article III of the Constitution. *Lo-Vaca Gathering Co. v. Railroad Com'n of Texas*, 565 F.2d 144 (Em.App.1977), cert. denied, 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978).

In construing the ESA review provisions, the Supreme Court has left no clue as to what view it would adopt as to the meaning of "arising under" in the context in which it appears in the case at bar. The Supreme Court has indicated a willingness to interpret the review provisions in line with discernible congressional intent. *See Bray v. United States*, 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975).

1144 (E.D.Pa.1973), *aff'd* 482 F.2d 1400 (Em.App.1973). Our disagreement comes with the district court's application of this test.

■ In its Opinion and Order, the district court itself recognized that "no hard and fast rule has been laid down by the Supreme Court in determining when a law as applied retroactively is fair or not." Rather, the Supreme Court has looked to the nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted pre-enforcement rights, and the nature of the right which the statute alters. Primarily, the district court's estimation of the importance of the entire statutory scheme to regulate crude oil prices led it to conclude that retroactive enforcement did not violate due process:

> the urgency and importance of the energy issue to the nation and its economy cannot be doubted. The public interest in maintaining continuity in the scheme of regulation is compelling in this case.

We find the district court's determination of insubstantiality in error because its retroactivity analysis focuses upon the overall importance of the Allocation Acts rather than focusing upon the specific instances of retroactive application brought into question by this case. We find a substantial constitutional question is involved in the determination of whether, under these circumstances, due process is violated where the price regulations in question are applied retroactively to cover those portions of an installment contract (1) fully performed on both sides while no regulations were in effect or (2) fully performed by the seller while no regulations were in effect and fully performed by the buyer during the same period except for payment of the sum agreed to in the contract. TECA has turned down a constitutional challenge to the power of the FEA, pursuant to regulations promulgated under the Allocation Acts, to regulate the price charged for crude oil in sales under pre-existing contracts made when no regulations were in effect. *Basin, Inc. v. FEA*, 552 F.2d 931 (Em.App.1976). But *Basin* did not decide whether the FEA may require retroactive

disgorgement of the amount by which the sales price of crude oil, unregulated at the time of the completion of the installment, exceeded the price level set by regulations subsequently put into force, nor did *Basin* consider whether retroactivity violates due process where subsequently imposed regulations become effective after full completion of delivery by the seller but before the payment of the agreed-upon price by the buyer.

Nonretroactivity of the regulations under the Allocation Acts to cover contracts such as those in *Basin* would have far more serious consequences for the statutory scheme than those likely to occur in the case at bar. Absent retroactive application in *Basin*, broad or totally open-ended contracts entered into while no regulations were in effect could serve as the springboard for massive unregulated transfers of oil. The denial of retroactivity to the comparatively small number of transactions at issue in the case at bar would have a relatively minor impact upon the scheme of regulations under the Allocation Acts. Here, denial of retroactivity will affect only those transactions where the parties completed both delivery and payment during the hiatus period or only those in which the seller fully performed his obligation to deliver and contract completion required only the payment of money by the buyer. Thus, the balancing analysis, if not the ultimate conclusion, in the case at bar will necessarily differ greatly from that in *Basin*. Therefore, we hold that the district court erred in not certifying the issue to TECA pursuant to Section 211(c), 12 U.S.C.A. § 1904 note.

Citronelle has raised other constitutional issues in the case at bar. However, it would be premature to direct certification of those issues at this time. Under the provisions of Section 211(c), 12 U.S.C.A. § 1904 note, TECA, on receipt of a certified question, may direct that the district court send it the entire case for disposition, remand the certified issue for further factual development, or give binding instructions on the certified issue and remand the case to the district court for further disposition. Depending upon TECA's determinations,

the question whether to certify these remaining constitutional issues could become moot.

Because we disagree with the district court's conclusion that this case presented no substantial issues of the constitutionality of the regulations under the Allocation Acts, we remand this case to permit the district court to comply with its certification duty. By this limited exercise of our jurisdiction to determine jurisdiction, we do not intend to intimate or suggest the answer to the question to be certified or which, if any, of its several options TECA should exercise in determining those matters over which the Allocation Acts grant it jurisdiction. *Cf. Atlantic Las Olas, Inc. v. Joyner*, 466 F.2d 496 (5th Cir. 1972). Of course, TECA is also free to determine that no substantial constitutional issues exist in this case.

The cause is remanded to the district court with directions that it certify to TECA the substantial constitutional questions raised by Gulf's counterclaim concerning due process limits upon retroactivity.

REMANDED WITH DIRECTIONS.