**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Oscar S. WYATT, Jr., Defendant-Appellant.**

**No. 81–2413.**

United States Court of Appeals, Fifth Circuit.

July 21, 1982.

---

William L. Bowers, Jr., Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

Oscar S. Wyatt, Jr., chairman of the board and chief executive officer of the Coastal Corporation, pled guilty to an amended criminal information alleging that he concealed the true sale price of over 331,000 barrels of domestic crude oil in order to obtain a price for that oil higher than the price permitted by federal regulation. On the basis of his plea, Wyatt was convicted of engaging in a proscribed activity relating to the production and refining of crude oil. Wyatt now attacks his conviction on a multitude of statutory and constitutional grounds. We conclude, however, that he has brought his challenge to the wrong court. The appeal is accordingly dismissed for want of jurisdiction.

## I.

In the latter months of 1975, Wyatt directed the Coastal Corporation in a complex series of foreign and domestic sales of domestic crude oil, through which the Corporation ultimately garnered a price for that oil in excess of the price authorized by Department of Energy price regulations. Wyatt eventually admitted his participation in the sale "solely in his capacity as Chairman of the Board and Chief Executive Officer of the Coastal Corporation," and pled guilty to an amended criminal information charging the scheme to be in violation of regulation 10 C.F.R. § 210.62(c), as promulgated under the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 et seq. Section 210.62(c) provides in pertinent part:

> Any practice which constitutes a means to obtain a price higher than is permitted by the regulation in this chapter or to impose terms or conditions not customarily imposed upon the sale of an allocated product is a violation of these regulations.

The information characterized Wyatt's regulatory violation as committed in the course of an activity relating to the production and refining of domestic crude oil.[1] So construed, Wyatt's acts were considered to be punishable under the terms of 15 U.S.C. § 754(a)(3)(B)(i), which provides for penalties of up to one year in prison, or a fine of up to $40,000, or both.[2] Wyatt was assessed a $40,000 fine.[3]

On appeal, Wyatt raised five challenges to his conviction. He argued that 10 C.F.R. § 210.62(c) is void because it was issued without compliance with the notice and comment requirements of section 4 of the

---

1. The amended criminal information to which Wyatt pled guilty states in full:

   THE UNITED STATES ATTORNEY CHARGES:

   That on or about December 31, 1975, in the Southern District of Texas and within the jurisdiction of this Court, OSCAR S. WYATT, JR., solely in his capacity as Chairman of the Board and Chief Executive Officer of The Coastal Corporation, Houston, Texas, did willfully and knowingly violate Title 10, Code of Federal Regulations, Section 210.62(c) with respect to the production and refining of domestic crude oil by engaging in a practice which constituted a means to obtain a price for crude oil higher than permitted by regulation, to wit: By concealing the true price of 331,458.98 barrels of domestic crude oil sold on or about September 11, 1975 from Coastal States' Crude Gathering Company, Houston, Texas, to Coral Petroleum, Inc., Houston, Texas.
   (Violation: Emergency Petroleum Allocation Act, Title 15, United States Code, Section 754(3)(B)(i)).

2. 15 U.S.C. § 754(a)(3)(B) states, in pertinent part:

   Whoever willfully violates any provision of such regulation, or any such order shall be imprisoned not more than 1 year, or—
   (i) with respect to activities relating to the production or refining of crude oil, shall be fined not more than $40,000 for each violation; ... or both.

3. Whether Wyatt could be imprisoned for his offense is a matter of some doubt. The EPAA, in 15 U.S.C. § 754(a)(4), conditions the imposition of a term of imprisonment on a corporate director, officer, or agent convicted of violating section 754(a)(3) on that person's actual or constructive knowledge of a "notice of noncompliance" served on the corporation. The Government accepted Wyatt's admission of guilt "solely in his capacity as Chairman of the Board and Chief Executive Officer of the Coastal Corporation," see note 1, supra, and has stipulated that no notice of noncompliance was sent to the Coastal Corporation.

Administrative Procedure Act (APA), 5 U.S.C.A. § 553 (West 1977); failing that, he argued that 10 C.F.R. § 210.62(c) either does not apply to crude oil transactions or, if interpreted to be applicable, is so vague as to supply inadequate basis for the imposition of criminal sanctions. He charged the amended criminal information to be fatally defective on the theory that the acts he concededly committed do not constitute an offense relating to the "production or refinement" of crude oil. And, finally, noting that the transactions resulting in collection of an excessive price were, except for final invoicing and payment, completed during a hiatus in the effective period of the EPAA and its regulations, he argued that punishment for the latter acts effectively constitutes a prohibited *ex post facto* criminalization of the former.

The Government responded to Wyatt's claims with the assertion that all were foreclosed by his guilty plea,[4] and with counter arguments on the merits. There was but a single area in which the parties were in agreement: both asserted Wyatt's appeal to fall within this Court's criminal appellate

jurisdiction under 28 U.S.C.A. § 1291 (West 1966). It is on this assertion that Wyatt's appeal founders.

## II.

The Temporary Emergency Court of Appeals (TECA) has "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under the EPAA or under regulations or orders issued thereunder." § 5(a)(1), Emergency Petroleum Allocation Act (EPAA), *as amended*, 15 U.S.C.A. § 754(a)(1) (West 1976) *incorporating* § 211(b)(2), Economic Stabilization Act of 1970 (ESA), 12 U.S.C.A. § 1904 note (West 1980).[5] The controlling phrase "cases arising under the EPAA" has consistently been interpreted by this Court, the TECA, and other courts to demand analysis of the issues presented on appeal: where resolution of the litigation will be controlled by a determination of the validity, constitutionality, interpretation, or application of the EPAA and its regulations, the controversy is considered to be one within the province of the TECA. alone.[6] *United States v. Uni-*

4. Our disposition of Wyatt's appeal makes unnecessary consideration of this argument. We note, however, that while a guilty plea limits the challenges which may be raised against a conviction, it does not eradicate them.

> A [voluntary and intelligent] plea of guilty ... removes the issue of factual guilt from the case .... [I]t renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is established .... [But] a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the state may not constitutionally prosecute.

*Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 242 n.2, 46 L.Ed.2d 195 (1975); *United States v. Meacham*, 626 F.2d 503, 510 (5th Cir. 1980); *see United States v. Di Fonzo*, 603 F.2d 1260 (7th Cir. 1979); *Kolaski v. United States*, 362 F.2d 847 (5th Cir. 1966); *Melvin v. United States*, 316 F.2d 647 (7th Cir. 1963); *accord United States v. Johnson*, 546 F.2d 1225 (5th Cir. 1977).

5. This grant of special jurisdiction was made a part of the EPAA through § 5(a)(1), 15 U.S. C.A. § 754(a)(1) (West 1976). That section. states, in pertinent part:

> [S]ections 209 through 211 of the Economic Stabilization Act of 1970 ... shall apply to the regulation promulgated under section 753(a) of this title, to any order under this chapter, and to any action taken by the President (or his delegate) under this chapter, as if such regulation had been promulgated, such order had been issued, or such action had been taken under the Economic Stabilization Act of 1970.

Section 211(b)(2), Economic Stabilization Act of 1970 (ESA), 12 U.S.C.A. § 1904 note (West 1980) provides that "[t]he Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases or controversies arising under this title or under regulations or orders issued thereunder."

6. Wyatt argues, in his supplemental brief filed upon this Court's request for enlightenment on the jurisdictional issue, that the TECA's exclusive appellate jurisdiction does not include actions resulting in criminal sanctions, because those sanctions include the possibility of imprisonment. Wyatt begins his argument by noting that the EPAA, as originally enacted in 1973, incorporated the penalty provision of the ESA, as well as its grant of exclusive appellate jurisdiction to the TECA. § 5(a)(1), 15 U.S.C.

*Oil, Inc.,* 646 F.2d 946, 949–50 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct.

§ 754(a)(1) (1973) (amended 1975). That penalty provision, found in § 208 of the ESA, 12 U.S.C.A. § 1904 note (West 1980) states:

§ 208. Sanctions; criminal fine and civil penalty

"(a) Whoever willfully violates any order or regulation under this title shall be fined not more than $5,000 for each violation.

"(b) Whoever violates any order or regulation under this title shall be subject to a civil penalty of not more than $2,500 for each violation.

Imprisonment is not authorized by § 208(a). In 1975, the Congress amended § 5(a) of the EPAA to include a carefully structured scheme of civil and criminal penalties. The criminal penalties included imprisonment. EPAA Amendments of 1975, Pub.L. 94–163, Title IV § 452, 89 Stat. 948 (amending 15 U.S.C. § 754 (1973)). Incorporation of § 208 of the ESA was eliminated by concurrent amendment of § 5(a)(1) of the EPAA, 15 U.S.C.A. § 754(a)(1) (West 1980). *Id.* No modification was made in the TECA's jurisdictional grant. Wyatt interprets this sequence of events as a congressional failure to enlarge the TECA's jurisdiction beyond an original scope which excluded, by virtue of the limited range of sanctions authorized in § 208(a), appeals from convictions carrying a punishment of imprisonment. He concludes from this that the TECA is without jurisdiction over criminal appeals. The argument is creative, but we must disagree.

The TECA's grant of exclusive jurisdiction comprehends "*all* appeals from the district courts of the United States in cases or controversies arising under [the EPAA]," § 211(b)(2), 12 U.S.C.A. § 1904 note (West 1980) (emphasis added). The language of this jurisdictional grant admits of no other limitation than that of controlling law. Section 211(b)(1), 12 U.S.C.A. § 1904 note (West 1980) provides that:

Except as provided in subsection (d)(2) of this section, the court shall not have power to issue any interlocutory decree staying or restraining in whole or in part any provision of this title, or the effectiveness of any regulation or order issued thereunder. *In all other respects, the court shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title.*

(emphasis added). So defined, the scope of the TECA's power is ample to authorize review of whatever penalties are imposed by the Congress for violation of the laws within that court's jurisdiction.

The pattern of amendments enacted by the Congress, far from supporting Wyatt's contentions, reinforces the conclusion drawn from the language: by deleting § 208 from incorporation in the EPAA through that Act's § 5(a), the Congress manifested a keen awareness of the place of the ESA provisions in the EPAA en-

1254, 71 L.Ed.2d 446 (1982); *Quincy Oil, Inc. v. Federal Energy Administration,* 620

forcement scheme. The absence of amendment to the EPAA's incorporation of the ESA's jurisdictional grant, in light of the replacement of ESA penalties with the carefully constructed EPAA scheme, necessitates a conclusion that the Congress believed and intended the original jurisdictional grant to be adequate authorization for review of convictions drawing the new penalties.

Given this utter absence of statutory ambiguity, it is unnecessary to inquire into the legislative history of the ESA and EPAA. We would note, however, that we find unpersuasive Wyatt's references to an expressed congressional intention of patterning the TECA after the Emergency Court of Appeals (ECA) established during World War II, *see* S.Rep.No.92–507, 92nd Cong. 10, reprinted in [1971] U.S. Code Cong. & Ad.News 2283, 2292. The ECA held a narrow grant of exclusive jurisdiction: the Congress invested it with "the powers of a district court," § 204(c) of the Emergency Price Control Act of 1942 (EPCA), 50 U.S.C.A. Appendix § 924(c) (terminated by Act of July 25, 1946 c. 671 § 1, 60 Stat. 664) in exercising "exclusive jurisdiction to determine the validity of any regulation or order . . . [or] of any price schedule effective in accordance with the provisions of [this Act]," § 204(d) of the EPCA, 50 U.S.C.A. Appendix § 924(d) (terminated 1946). Specific provision was made for the integration of regulatory validity proceedings in the Emergency Court of Appeals with criminal proceedings in the district courts where the criminal defendant raised a defense of regulatory invalidity, § 204(e)(2) of the EPCA, 50 U.S.C.A. Appendix § 924(e)(2) (terminated 1946); *see Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The analogy serves only to emphasize the necessity of a congressional expression of limitations on grants of exclusive specialized jurisdiction, where the courts created are otherwise authorized to exercise all powers accruing to like courts.

Finally, we note the several cases acknowledging the TECA's jurisdiction over EPAA criminal prosecutions. In *United States v. Zang,* 645 F.2d 999 (Em.App.1981), the TECA was asked to review a district court's refusal to dismiss indictments charging violations of federal conspiracy, mail fraud, wire fraud, and racketeering statutes. The offenses were committed in the course of violations of the mandatory petroleum price regulations promulgated pursuant to the EPAA. The defendants argued the effect of the EPAA's misdemeanor penalty scheme, § 5, 15 U.S.C.A. § 754 (West 1976) was to preempt general criminal statutes, where conduct offending the latter constituted violations of EPAA maximum pricing regulations. Their appeal to the TECA was premised on the assumption that that court has jurisdic-

F.2d 890, 893 (Em.App.1980); *Coastal States Marketing v. New England Petroleum*, 604 F.2d 179, 185–87 (2d Cir. 1979); *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 591 F.2d 711, 716 (Em.App.1979); *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1380, 1382 (10th Cir. 1978); *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 578 F.2d 1149, 1154–55 (5th Cir. 1978). Our review of Wyatt's claims has led us to conclude that each presents an "EPAA issue," and that none may be adjudicated in this forum.[7]

▇ Neither Wyatt nor the Government, in their briefs responding to this Court's request for consideration of its jurisdiction, have claimed this Court to have jurisdiction to decide the applicability of 10 C.F.R. § 210.62(c) to crude oil transactions, or to inquire into the adequacy of the indictment. We agree with their tacit conclusion that these questions are properly put to the TECA. Decision of the former claim demands an interpretation of the limiting force of the regulation's reference to "allocated products"; agreement with Wyatt's assertion that the term modifies the regulation's reference to price restraints, as well as its reference to restrictions on terms of sale, would necessitate determination of whether the phrase "allocated products" properly may be understood to include crude oil. Review of Wyatt's claim that the acts which he concededly committed do not constitute the offense with which he was charged requires interpretation of section 754(a)(3)'s distinction between distribution-

related activities and production and refinement-related activities, and determination of the proper categorization of Wyatt's admitted activities. These claims demand nothing other than the construction and application of substantive provisions of the EPAA and its regulations, *Uni-Oil, Inc.* at 952; *Mountain Fuel Supply Co.* at 1383; they are classic "EPAA issues."

▇ Wyatt does argue that the remainder of his challenges to his conviction may be entertained by this Court. With regard to each issue, the premise of his argument is the same: noting that the claims involve allegations of procedural noncompliance, vagueness, and the constitutional prohibition on *ex post facto* laws, Wyatt characterizes them as problems of administrative and constitutional law, and concludes that they are, therefore, not issues arising under the EPAA or its regulations. But the question cannot be resolved by simple labeling. That issues comprehend legal principles beyond the EPAA does not of itself remove those issues from the jurisdiction the TECA; rather, the inquiry must focus on whether resolution of the question presented demands construction and application of the EPAA or its regulations. *See Uni-Oil, Inc.* at 950; *Quincy Oil, Inc.* at 893; *Mobil Oil Corp. v. Tully*, 639 F.2d 912, 915 (2d Cir. 1981); *United States v. Wickland*, 619 F.2d 75, 78–79 (Em.App.1980); *Mountain Fuel Supply Co.* at 1381–82.

▇ Wyatt's charge that 10 C.F.R. § 210.62(c) is invalid because it was issued

tion over offenses charged under § 5 of the EPAA. The TECA concurred in the defendants' premise, *id.* at 1003, 1005, but dismissed the case for want of jurisdiction upon concluding that the EPAA's penalty provisions did not supersede otherwise applicable federal felony statutes. *Id.; see also United States v. Zang*, 653 F.2d 493 (Em.App.1981) (dismissing for want of jurisdiction appeals from the judgments of conviction entered on the federal felony indictments, under the authority of its prior consideration of its jurisdiction). The same premise of jurisdiction over the EPAA's criminal penalty provisions underlaid the TECA's comprehensive review of convictions returned under those provisions in *United States v. Heller*, 635 F.2d 848 (Em.App.1980).

This considerable body of authority points uniformly and unambiguously toward the conclusion that the TECA's jurisdiction comprehends appeals taken from convictions entered under § 5(a)(3)(B), 15 U.S.C.A. § 754(a)(3)(B). Wyatt's contentions to the contrary are rejected.

7. Interpretation of the TECA's jurisdiction as "issue-related" has resulted in "the development of a system of bifurcated appeals from unitary judgments," *Coastal States Marketing*, 604 F.2d at 185, under which appeals raising both EPAA and non-EPAA issues are split between the TECA and the appropriate circuit court of appeals. We shall accordingly conduct a jurisdictional inquiry into each claim raised by Wyatt on appeal.

without compliance with the notice and comment procedures of section 4 of the APA, 5 U.S.C.A. § 553 (West 1977) without a doubt falls within the jurisdiction of the TECA.

> Section 4 of the APA was incorporated by reference in § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754(a)(1). An issue arising under the APA is not a collateral issue, then, but, by virtue of § 5(a)(1) of the EPAA, an issue arising under the EPAA itself.

*Energy Consumers, etc. v. Department of Energy,* 632 F.2d 129, 139 (Em.App.1980) *citing Texaco, Inc. v. Department of Energy,* 616 F.2d 1193, 1197–98 n.4 (Em.App. 1979) *and Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1056 (Em.App. 1978) (affirming its jurisdiction over a challenge to the validity of an EPAA "interpretive ruling" where the challenge was based on the promulgating agency's failure to comply with the notice and comment requirements of section 4(b) and (c) of the APA, 5 U.S.C. § 553(b) and (c)). As an EPAA issue, this question is beyond our purview.

■ Wyatt's constitutional claims demand a closer scrutiny.[8] The first is that 10

C.F.R. § 210.62(c), if interpreted to apply to transactions in crude oil, cannot be made the basis of a criminal prosecution because it sets so vague a standard as to fail to give the fair notice of proscribed conduct demanded by the due process clause of the fifth amendment. Review of this charge may be made—indeed, becomes necessary—only upon interpretation of the contested terms of section 210.62(c). A determination that the regulation does not reach transactions in crude oil would moot the dependent constitutional claim. A decision to the contrary would be predicated on a selection of either of two plausible interpretations of the regulation; the context of examination for vagueness would be defined only upon delineation of the limiting force of the regulation's reference to "allocated products," and, if required by that decision, upon a subsequent interpretation of the meaning of that term. These predicate issues are, as earlier noted, classic "EPAA issues," *supra* at 1085. A challenge to the constitutionality of either of these interpretations as used for the basis of a criminal prosecution is a challenge to the constitutional validity of prosecution under section 5(a)(3)(B), 15 U.S.C. § 754(a)(3)(B) (West 1976), for violation of 10 C.F.R. § 210.62(c) as interpreted

---

**8.** The Congress could not have more clearly expressed its intention to centralize in the TECA constitutional attacks on the EPAA and regulations and orders issued thereunder. Section 211(g) of the ESA provides, in pertinent part:

> The Temporary Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Temporary Emergency Court of Appeals, shall have exclusive jurisdiction to determine the constitutional validity of any provision of this title or of any regulation or order issued under this title. Except as provided in this section, no court, Federal or State, shall have jurisdiction or power to consider the constitutional validity of any provision of this title or of any such regulation or order, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this title authorizing the issuance of such regulations or orders, or any provision of any such regulation or order, or to restrain or enjoin the enforcement of any such provision.

Section 211(c) of that Act states that:

> (c) In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition.

Section 211, ESA, 12 U.S.A. § 1904 note (West 1980) *as incorporated in* § 5(a)(1), EPAA *as amended,* 15 U.S.C.A. § 754(a)(1) (West 1976). The question, then, as previously noted, is not whether the issue under review implicates principles of constitutional law, but whether its resolution will determine the validity of the EPAA or its regulations. *See Citronelle-Mobil Gathering Corp. v. Gulf Oil,* 578 F.2d 1149, 1153–55 (5th Cir. 1978).

and applied; such issues are exclusively the province of the TECA. *See* note 8, supra.[9]

Wyatt's second constitutional claim, and his final argument in support of his plea for reversal of his conviction, is that application of section 5(a)(3)(B), 15 U.S.C.A. § 754(a)(3)(B) (West 1976), to a transaction in crude oil occurring on September 11, 1975, violates the constitutional prohibition on prosecution under *ex post facto* laws. The argument arises from the delay between the expiration of the EPAA of 1973 on August 31, 1975, Pub.L.No.93–511, 88 Stat. 1608, and its re-enactment as amended by the EPAA amendments of 1975, Pub.L. No.94–99, § 3, 89 Stat. 481, on September 29, 1975. Section 5(a)(3)(B) became a part of the EPAA through the 1975 amendments to that statute; 10 C.F.R. § 210.62(c), along with all other regulations issued under the EPAA of 1973, were given uninterrupted effect by an express congressional direction of applicability retroactive to the date of expiration of the EPAA of 1973. Wyatt argues that his conviction under section 5(a)(3)(B) cannot present a "EPAA issue" because that penalty section did not exist at the time of the allegedly illegal sales; alternatively, he argues that criminal prosecution for activities occurring eighteen days before the enactment of the applicable criminal penalty provision constitutes prosecution under an *ex post facto* law.

■ The issue is not as clear as Wyatt would have us believe. The information to which Wyatt pled guilty charged as a violation of 10 C.F.R. § 210.62(c) his *concealment on December 31, 1975* of the price of crude oil sold on September 11, 1975. Examination of the stipulated statement of facts entered into the record of the district court as the factual basis for Wyatt's guilty plea discloses that, pursuant to a pre-arranged plan for circumvention of the petroleum price regulations, Coastal Corporation sold crude oil on September 11, 1975, for the price allowed under the EPAA regulations. The premium was not transferred at that time, but was invoiced and paid, through a transaction between Coastal Corporation, a Bermuda corporation, and the purchasing Texas corporation, on December 31, 1975. The question arising, then, is whether the invoicing and payment of the premium during an indisputably effective period of the EPAA for crude oil sold at the regulated maximum price during the hiatus between the expiration and re-enactment of the EPAA is *of itself* "a practice which constitutes a means to obtain a price higher than is permitted by the regulation," 10 C.F.R. § 210.62(c), or whether the invoicing and payment, in culmination of the scheme completed during the hiatus period save for transfer of the agreed-upon premium, violates 10 C.F.R. § 210.62(c) only in consideration of its place in the entirety of the plan. Interpretation of 10 C.F.R. § 210.62(c) again would lay the necessary predicate for, and must precede, consideration of Wyatt's constitutional challenge.[10] Resolution of this question of interpretation presents an issue beyond our jurisdiction.

9. This Court's decision in *Uni-Oil* is not to the contrary. In *Uni-Oil*, the Government appealed dismissals of indictments for Title 18, U.S.C., offenses of mail fraud, wire fraud, fraudulent representations and racketeering, which offenses were committed in the course of the miscertification and sale of "old" crude oil as "new" crude oil, as defined by EPAA petroleum price regulations. This Court assumed jurisdiction despite the defendants' contentions that their charge of unconstitutional vagueness in the EPAA regulations made the case one within the exclusive jurisdiction of the TECA. The *Uni-Oil* court's jurisdictional decision rested upon its determination that the statutory interpretation necessary to its resolution of the appeal was "not ... 'interpretation of the substantive provisions of the EPAA' [but] ... interpretation of the proper scope of the [Title

18] criminal code statutes under which the defendants were charged." 646 F.2d at 952 (footnote omitted). As that panel noted, the issue before it "[did] not require resolution of the constitutionality or even the interpretation of the regulations; only whether the criminal statutes clearly proscribed the conduct charged," *id.* at 950; "[t]he appellees' defenses ... simply do not require interpretation of the substantive provisions of the EPAA," *id.* at 952. Wyatt's case, demanding interpretation of an EPAA regulation, is precisely the case distinguished by the court in *Uni-Oil*.

10. In *Citronelle-Mobil Gathering*, 578 F.2d at 1155, this Court was asked to decide whether "retroactivity violates due process where subsequently imposed [EPAA petroleum price] regulations become effective after full completion of delivery [of crude oil] by the seller, but

## III.

Because Wyatt's appeal in all aspects presents issues within the exclusive jurisdiction of the Temporary Emergency Court of Appeals, it is dismissed for want of jurisdiction.[11]

DISMISSED FOR WANT OF JURISDICTION.

before payment of the agreed-upon price by the buyer." The situation presented by *Citronelle* is analogous to that which would exist on interpretation of § 210.62(c)'s prohibition of "a practice which constitutes a need to obtain [an excessive] price," to refer to a multi-step transaction in its entirety, rather than any discrete step in culmination of that scheme. This Court held the *Citronelle* issue to be a "substantial constitutional question," *id.*, which should have been certified to the TECA by the district court under § 211(c), 12 U.S.C.A. § 1904 note (West 1980), *see* note 8, *supra*, and remanded the case for entry of certification by the district court. The TECA, on consideration of the appeal later lodged with it, held that "[as] the determination of the proper price for crude oil in this case depends on the retroactive application *vel non* of the EPAA amendments ... this controversy clearly arises under the EPAA and is, therefore, within the jurisdiction of the TECA alone," *Citronelle-Mobil Gathering*, 591 F.2d at 791.

11. In his supplemental brief, Wyatt characterized his possible loss of appellate review as "simply not a state of affairs conducive to the proper administration of justice," Appellant's

Supplemental Brief at 19, and strongly urged this Court to "take a liberal view of its right to decide this appeal," *id*. This Court cannot, of course, stretch its jurisdiction beyond limits clearly set by the Congress. These limits are not newly delineated by our decision in this case; indeed, the need to ascertain the locus of appellate jurisdiction should have been apparent to Wyatt in view of his reliance in his original presentation of the merits of his case on *Citronelle-Mobil Gathering*, *see* note 10, *supra*.

The practical difficulties of anticipating jurisdictional decisions may be avoided by filing protective appeals in both the TECA and in the appropriate circuit court of appeals, *see Citronelle-Mobil Gathering*, 591 F.2d at 716; *Coastal States Marketing*, 604 F.2d 186 n.9. We may not now correct Wyatt's oversight: we are without power to transfer to the TECA an appeal which should have been lodged with it in the first instance. *Citronelle-Mobil Gathering*, 591 F.2d at 716; *United States v. Cooper*, 482 F.2d 1393, 1398–1400 (Em.App.1973).